

JUDGE BURGESS

FILED ___ LODGED ___
___ RECEIVED

SEP 23 2019

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIC DETRICK McPHERSON,
        Movant,

  -v-

UNITED STATES OF AMERICA,
        Respondant.

(  Case No. CR94-5708FDB

(  **MOTION FOR COMPASSIONATE RELEASE VIA**
(  **REDUCTION OR MODIFICATION OF SENTENCE**
(  **PURSUANT TO 18 U.S.C., § 3582(c)(1)(A)(i)**
(  **FOR EXTRAORDINARY AND COMPELLING REASONS**
(  **OR, ALTERNATIVELY, THE 'HOLLOWAY DOCTRINE'**
(

---

COMES NOW, Eric Detrick McPherson, herein as "MOVANT" or "McPHERSON", a pro-se litigant in the above-styled cause, to move this Honorable Court in support of his MOTION FOR REDUCTION OR MODIFICATION OF SENTENCE, based on the statutory changes to 18 U.S.C. § 924(c) via the **'First Step Act'** [S.756, Section 403], enacted by Congress.

Where the 'First Step Act' is quasi-retroactive, as an alternative, consideration is requested via the so-called 'Holloway Doctrine'. In support of such issuance, McPHERSON offers the following:

> [MOVANT invokes the protection of Supreme Court's ruling in **Haines -v- Kerner**, **404 U.S. 519**, 30 L.Ed.2d 652 (1972)("Pro-se pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers: If the court can reasonably read the pleading to state a claim on which the litigant could prevail, it should do so despite a failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.")]

### THE FIRST STEP ACT [S.756]

Section 403 of the First Step Act resolves an existing ambiguity in 18 U.S.C., § 924(c)(1), about when to apply enhanced penalties for using a firearm during certain crimes based on a defendant's prior convictions. 'First Step' makes it clear that the enhanced mandatory minimums for using a firearm during certain crimes only applies when the qualifying prior conviction was already final at the time of the new offense. [This change would unfortunately not apply retroactively to the over 700 inmates with

these unjust sentences automatically.]

In the past the government sought to apply 924(c) to offenders convicted of multiple gun charges on the same day [as in MOVANT's case] with the goal to enhance without the necessary prior convictions under the section, thus obtaining higher mandatory minimum penalties on each count of conviction. This was an issue of controversy at MOVANT's sentencing that this Court concluded it lacked discretion in deciding in favor of not applying what amounted to a 'double-enhancement' for a single conspiracy.

McPHERSON now seeks COMPASSIONATE RELEASE pursuant to § 3582(c)(1)(A)(i), for extraordinary and compelling reasons which warrant such release, or, alternatively, he petitions this Court to ask the Government to agree to let the Court vacate one of his 924(c) convictions, which would reduce his sentence to 13 years (156 months) by allowing use of the 'Holloway Doctrine' (U.S. -v- Holloway, 68 F.Supp.3d 310 (E.D.N.Y. 2014)), in which that court's judge used a similar opportunity to ask the U.S. Attorney to consider allowing him to vacate some of the convictions to give the defendant back more than 30 years of his life.

Where the majority of his sentence has elapsed, McPHERSON is trying to restore less than four (4) years of the penalties improperly used against him. The defendant in Holloway used a gun to commit three carjackings, none of which resulted death or injury. Though there was also no death or injury in McPHERSON's case, he contrarily was never accused of using or carrying a weapon in his alleged robberies, but was instead held culpable for the actions of his alleged codefendant via conspiracy.

## McPHERSON's OFFENSES & SENTENCE

(1) Along with an accomplice, McPHERSON allegedly robbed two banks in three weeks during October and November of 1994. The Government brought seperate counts for each bank robbery, and each robbery was accompanied by its own so-called "924(c) count". The latter counts makes it a crime to, among other things, use a firearm during a crime

of violence. Discovery information indicated McPHERSON never possessed any form of wea-
pon.

(2) In 1995, shortly before trial, the Government offered McPHERSON a plea bargain
encompassing the two bank robberies and a single 924(c) count. The flaw was McPHERSON
was not present at the initial arraignment (attorney only) and did not comprehend the
plea offer would drop the additional 924(c) count in exchange for a plea of guilt. With-
out such knowledge of facts, McPHERSON (a prior felon) contemplated the risks of a 14-
year trial outcome to the benefits of a 12-year plea agreement. McPHERSON maintained his
innocence and insisted on a trial. He got one, but making that choice exposed him to a
superceded indictment which added a conspiracy charge and what he thought was an 'addi-
tional' 924(c) count. He did not contemplate and failed to comprehend the triple threat
of multiple 924(c) counts: mandatory sentencing, onerous enhancements for "second or
subsequent" convictions that occur in a single conspiracy trial, and sentencing required
to be mandatorily consecutive to one another and to all other sentences in the case - as
was his outcome.

(3) as a result, McPHERSON received an enhanced sentence for a single weapon in a
single conspiracy which factually affected a single victim [both branches belonged to
West One Bank], for actions not of his own, but of the aforementioned accomplice. That
sentence is as follows: Count 1 (conspiracy) - 60 months; Count 2 (bank robbery) - 92
months; Count 3 (924(c)) - 60 months; Count 4 (bank robbery) - 92 months; Count 5 (924
(c)) - 240 months. The sentence resulted to 392 months, with 240 months administered in
effect as an enhancement for a weapon which evidence proved McPHERSON never possessed
and this Court had concerns with applying at the time as proper, illustrated infra.

(4) Though by today's standards his sentence should've been 152 months, McPHERSON's
conviction was affirmed by the Ninth Circuit in 1996. He did not appeal to the Supreme
Court due to lack of counsel or understanding as to the post-appelant process. His col-

lateral attack pursuant to 28 U.S.C. § 2255 was unintentionally activated by a motion for request of sentencing transcript, and was ultimately denied in 1997 after an earlier denial for extention of time to file a proper § 2255 brief. A subsequent effort to file a Rule 60(b) motion in 1998 was dismissed due to a time-lapse after instructions from the clerk to reduce the page-length of the initial brief were not met. Feeling his collateral options exhausted, McPHERSON's judicial actions have been asleep, awaiting a legal climate change which would support the legal theory of his sentencing objections. The 'First Step Act' represents that change.

(5) McPHERSON is currently housed at Lexington Medical Center, P.O.B. 14500, Lexington, Kentucky, 40512. He was convicted in 1995 at the age of 33 and has currently attained the age of 57. His points of mitigation are (1) he's served over 80% of his current sentence, (2) he has no history of violence, and (3) he has not engaged in violent or drug-related behavior while in custody.

## REQUEST FOR RELIEF

McPHERSON was initially sentenced after a continuance by this Court to determine if it was proper to further enhance his sentence for a second or subsequent conviction of 18 U.S.C. § 924(c). Twenty-four years later, Congress has clarified which sentence was proper for McPHERSON by passing the 'First Step Act'. Section 403 of the 'First Step Act' states as follows: (a) In general — Section 924(c)(1)(A) of Title 18, United States Code, is amended, in the matter proceeding clause (i), by striking "second and subsequent conviction under this section" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has been final". It is important to note section 403 of the bill is entitled "CLARIFICATION of Section 924(c) of Title 18, United States Code".

Specifically, the language of 'First Step' that modifies § 3582(c)(1)(A), and on which McPHERSON relies, provides that a sentencing court now may modify a sentence not

only upon motion made by the Director of the Bureau of Prisons but also upon motion by a defendant when certain conditions are met. Where the new statutory provision may afford a movant basis for relief in the sentencing court that he did not possess at the time prior petitions were filed, the provision MAY be applied retroactively ONLY after a court considers sentencing factors, including any danger, prison misconduct, and information provided by the Government, and, as amended, may not be applied retroactively to such offender who has been convicted of any serious violent felony, or to any drug trafficker who brandished or used a gun in the commission of that offense.

However, where 'First Step' has changes which are broadly written, there's a viable argument for why federal district court judges can use the compassionate release statute, as amended, as a second look provision to reduce a sentence for people in federal prison if "extraordinary and compelling reasons" are present. Federal judges can and should give sentence reductions in cases where people in federal prison have a demonstrated record of rehabilitation in addition to compelling reasons why they were sentenced too harshly.

With that said, McPHERSON asserts this Court sought at sentencing clarification as to the proper application of enhancement directly related to a "second or subsequent conviction" that would suggest, had the law been clear at that time, no 'extra' penalty for the single use of a weapon via conspiracy would have appled. There was no 'prior' offense to consider at sentencing to support the 'stacking' of an extra 20 years McPHERSON now suffers, yet ironically the language of 'First Step' bears an exact resemblance to his initial assessment at sentencing: that he should serve a 60-month enhancement for the current conspiracy offenses, with the understanding that any subsequent violations after his release relating to § 924(c) would result in a greater statutory penalty; at the time being 240 months. See Verbatim Transcript of Sentencing (VTS), 13-Oct-95 [Atmt.B], page 10, line 17, to page 11, line 5 [henceforth: VTS.10, ln.17 - VTS.11, ln.5]. ALSO SEE: [Atmt.A] - Court's concern as to proper sentencing, VTS.3, lns.4-9; VTS.20, lns.6-17.

In fact, 'First Step' also goes as far as to support the argument presented via coun-
sel at McPHERSON's sentence that, if applied at all, any subsequent 924(c) penalty in a
single judgement should be for additional 60-month increments, not the 240 months inter-
preted then. See: [Atmt.C] - VST.6, lns.15-17.

The revealing 'clarification' of the 'First Step Act' is this Court may have uninten-
tionally engaged in a form of 'duplicative' double-counting when it sentenced for the use
of a single firearm for both the offense of conspiracy and multiple 924(c) counts, though
at the time it may have seemed proper. In the conspiracy count the Grand Jury charged
McPHERSON conspired "to rob one or more banks, in violation of 18 U.S.C. § 2113(a) and
(d), and to use a firearm to successfully complete one or more robberies, in violation
of 18 U.S.C. § 924(c)."  The Grand Jury did not distinguish which subdivision of § 924
(c) it considered valid in its indictment. But the matter of import is the fact that
using a firearm to 'successfully complete' one or more robberies is not an element of
the statute. However, such language makes it obviously clear that a singular conspiracy
was the exposure McPHERSON faced, no matter whether one 'or more' robberies were com-
mitted. Persuasive precedent supports the notion that the single use of a gun that re-
sults in more than one offense supports only a single § 924(c) enhancement, and where
"there was only one use (albeit a repeated use) of a firearm," only one § 924(c) enhance-
ment could stand. **U.S. -v- Wilson**, 160 F.3d 732, 749, 333 U.S.App. D.C. 103 (D.C. Cir.
1998). Also: **U.S. -v- Andrade**, 993 F.Supp.2d 1269 (9th Cir. 2014)(the same discrete act/
crime of violence resulted in duplicative convictions).

At trial, the Government relied on **Pinkerton -v- U.S.**, 328 U.S. 640, 66 S.Ct. 1180,
90 L.Ed. 1489 (1946), which "renders all co-conspirators criminally liable for reason-
ably forseeable overt acts committed by others in furtherance of the conspiracy they have
joined, whether they were aware of them or not." Cf. **U.S. -v- Hernandez-Orellana**, 539
F.3d 994, 1007 (9th Cir. 2008). The jury found McPHERSON guilty with respect to his co-

defendant's use of a weapon as a show of force, violence and intimidation via conspiracy, though the Government conceeded at trial a lack of guilt with respect to him actually using or carrying a weapon during a crime of violence.

As trial concluded, there was no direct evidence before the jury linking McPHERSON to the use or carry of firearms, and no evidence that guns were discussed or present during any planning stages of the overall conspiracy. Without the conspiracy count lending its **Pinkerton** theory, to include instructions to the jury that rendered the 924(c) counts as no more than overt acts of such conspiracy, McPHERSON only committed one affirmative act: a single conspiracy that doesn't justify two different Section 924(c) enhancements.  Whether a criminal episode contains more than one unique and independant use, carry, or possession depends at least in part on whether the defendant made more than one choice to use, carry, or possess a firearm. Where the Government's case alleged via conspiracy to a single choice to rob "one or more" banks, a jury can disregard how many uses of that weapon led to a bank being robbed. It only had to consider whether McPHERSON made the initial choice to conspire. The 924(c) counts were therefore multiplicious, and McPHERSON should not have been burdened with a second or subsequent 924(c) enhancement under such circumstances. Because of that scenario this Court was challenged with what was proper in sentencing McPHERSON for multiple § 924(c) counts. The ⁺First Step Act' allows this Court to rectify that decision.

If McPHERSON's argument isn't pursuasive he still feels this Court should convince the Government not to challenge a sentence reduction and grant such. At sentencing this Court erroneously believed it was not authorized to consider the then-presented sentencing schemes of McPHERSON or his attorney in arriving at a prison term that was reasonable. In a recent Supreme Court ruling (**Dean -v- U.S.**, 2017 BL 107794, U.S., No. 15-9260, 4/3/17), the court pointed to the general sentencing statute, 18 U.S.C. § 3553(a), which instructs courts to "impose a sentence sufficient, but not greater than necessary, to

comply with" the four identified purposes of sentencing: just punishment, deterence, protection of the public, and rehabilitation.

McPHERSON has now served by the time of this ruling a quarter-century on a sentence that would not have exceeded 152 months under the current judicial limits the "First Step Act" entails, a time when even supervised release would've long elapsed. Said 25 years encompasses many 'programs' McPHERSON has partaken, for which he will now not receive recognition for under the "First Step Act", which should still be considered by this Court in the current action. See SRP - Progress Report (Education Courses) [Atmt.D].

## McPHERSON's POST-CONVICTION CONDUCT

Since his incarceration, MOVANT for the most part has maintained a very good institutional record, even better than that found in Holloway. In 25 years McPHERSON has had only two violations, both resulting in termination from UNICOR for minor offenses. The first was in 2014, a violation of Program Statement 318 (lying to a staff officer), for claiming the need to leave work early to make a phonecall to his attorney, which he did not do. The second was for allegedly sleeping on the job, for which MOVANT challenged on the basis that he was terminated but never received an incident report. Region recently denied MOVANT's BP-10 Remedy Request. After each incident McPHERSON went to work for the Inmate Medical Hospice via the Inmate Companion Program, where he is currently employed. That's a total of 19½ years for the FPI (UNICOR) and 3½ years as a hospital ICP.

McPHERSON has been diligent in his efforts to become educated in various fields of academic programs offered by the Federal Bureau of Prisons [Atmt.D], which is corroborative of his foregoing assertion that his conduct has been, for the most part, impeccable since the inception of his sentence. A copy of MOVANT's most recent program review is attached hereto and filed herewith for this Court's review. However, MOVANT invites this Court to contact his current facility, indicated supra, and request a further report on his conduct and programming throughout his incarceration, if it so deems necessary.

## McPHERSON's CURRENT MEDICAL STATUS

At age 57, MOVANT primarily copes with cronic care for several ailments such as Lycin Symplex Cronica (a permanent skin allergy condition); esophageal (silent) reflux; C.O.P.D. (lung disease); sleep apnea; asthma; early rheumatoid arthritis (hands, feet & hips); spinal arthritis (throat); and hypertension, all of which are accompanied by bad lower leg circulation and random pain spasms due to testicular tube fluid. Still, none of McPHERSON's ailments have resulted in any current medical restrictions that limit his ability to aid and assist others in his current ICP position. [This Court is welcome to contact FCIM Lexington's medical staff for F4 Morning Watch, specifically Mr. Ratlif, for more details as to his current work performance.] However, McPHERSON can assure this Court of no further desire at this late stage in life to partake in illegal activity in the future, for his health has been at issue and in decline since the start of his incarceration. He now only desires to improve his health and prolong his life with the aid of family and loved ones.

## CONCLUSION

MOVANT was in his early 30s upon incarceration, neglecting family and many responsibilities due to drug dependencies. Upon his release he still bears responsibilities, but he has been sober and has very much matured over the last quarter-century. MOVANT knows discretion completely rests within this Court to either grant or deny his motion, or to seek permission or consent from the Government to reduce his sentence, if necessary.

That said, McPHERSON respectfully urges and prays this Court grants his motion and allow him at this late date to more expeditiously resume his freedom and become an aid and asset to his family. Now, instead of his five children, it is his mother and a couple of grandchildren who need him as the primary caretaker of their household while rebuilding what remains of his life. MOVANT implores this Court to consider and grant a sentence reduction as lenient as requested and now allowed under the authorities set forth herein,

and to give MOVANT the opportunity to recommit to his family's well-being, as well as have a chance to meet and assist the newer members of his family which have arrived during his incarceration.

THEREFORE, for the above-expressed reasons, MOVANT avers it is proper to GRANT his MOTION FOR COMPASSIONATE RELEASE VIA REDUCTION OR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C., § 3582(c)(1)(A)(i), FOR EXTRAORDINARY AND COMPELLING REASONS OR, ALTERNATIVELY, THE 'HOLLOWAY DOCTRINE', and he prays this Court, after proper consideration of the extraordinary and compelling reasons herein, responds accordingly with the language of the 'First Step Act' by ordering a sentence reduction resulting in immediate release of his person, as well as any other reliefs this Court deems appropriate or necessary.

RESPECTFULLY submitted,

Eric Detrick McPherson

Eric Detrick McPherson, #24919-086
FMC Lexington, P.O.B. 14500
Lexington, KY  40512

DATED this 17TH day of September, 2019.

SECTION 3582 MOTION                    (10)
McPherson, #24919-086

<u>DECLARATION</u>

I, Eric Detrick McPherson, do declare under penalty of perjury that I have read and subscribe to the above, and state that the information contained therein is true and correct to the best of my knowledge.

EXECUTED on 17•SEP 19, at FMC Lexington, in Lexington, Kentucky

_Eric Detrick McPherson_
Eric Detrick McPherson
Reg.# 24919-086

<u>CERTIFICATE OF SERVICE</u>

I, Eric Detrick McPherson, do hereby certify under penalty of perjury that on this 17TH day of SEPTEMBER, 2019, 3 true and correct copies of a MOTION FOR COMPAS-SIONATE RELEASE VIA REDUCTION OR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C., § 3582 (c)(1)(A)(i) FOR EXTRAORDINARY AND COMPELLING REASONS OR, ALTERNATIVELY, THE 'HOLLOWAY DOCTRINE', have been provided to the below-listed parties via deposit into the mails of the United States of America [see <u>Houston -v- Lack</u>, 101 L.Ed.2d 245 (1988)], at FMC-Lexington, in Lexington, Kentucky, postage pre-paid, as follows:

CLERK of the U.S. Dist. Court
1717 Pacific Ave., Rm.# 3100
Tacoma, Washington 98402
(2 copies)

U.S. ATTORNEY's OFFICE
(ATTN: Joanne Y. Maida, AUSA)
3600 Seafirst Fifth Ave. Plaza
Seattle, Washington 98104-3190
(1 copy)

DATED this 17TH day of SEPTEMBER, 2019.

_Eric Detrick McPherson_
Eric Detrick McPherson, #24919-086
FMC Lexington, P.O.B. 14500
Lexington, KY 40512

3

1    So with that I'll hear from counsel as to what else you

2  care to -- you have argued to this matter to some extent, and

3  I think I'm well aware of all the issues involved in this

4  case. My concern was because of the length of the sentence

5  that this would bring by the two gun counts, because with the

6  one carrying a five and the second carrying a 25 years on top

7  of whatever the guidelines would say as to the predicate

8  offense. That was my concern, and I wanted to make sure in my

9  mind that everything was clear before we proceed.

10   What I have stated to you now, it's my clarity of the

11  situation, and if you want to speak beyond that, I'll hear --

12  Ms. Maida I'll hear from you first, if there's anything to --

13        MS. MAIDA:  Your Honor, I'll submit it, and I'll

14  reserve an opportunity to reply to Mr. Balerud's arguments.

15        THE COURT:  All right.

16   Mr. Balerud.

17        MR. BALERUD:  Your Honor, I'll thank the court

18  for the opportunity to have addressed you in full at our last

19  sentencing hearing, and I certainly do not want to remake the

20  wheel.  There's just a very few issues I would like to discuss

21  with the court.

22        THE COURT:  All right.

23        MR. BALERUD:  My concern for Mr. McPherson on

24  the way this case procedurally went is he felt out of control

25  from its initiation.  He was appointed -- who I understand is

20

1   subsequent offense, but also to satisfy my mind whether the

2   probation department between here and Seattle were operating

3   on the same page.   And that is that they are doing something

4   over there.   That's not being done here.   And whether what

5   they have done comports with the law as I understand it.

6        I further found out, in dealing with this Castaneda case,

7   that that particular matter that involved that analysis and

8   that kind of sentence, it predated the case in which I find

9   binding on this court, and that is this Neal case.

10       This Neal case* says that on the first (offense) five years,

11   second (offense) 20 years.   All of this five on each count, all

12   of that, went prior to this case.   And now this case is the

13   law of the Circuit, and I feel that it's binding on this court

14   to -- to follow that law.   So as to that, to the gun count,

15   this court has no -- no discretion, as I see it, to deviate in

16   any way from that.   And so on those two gun counts, the

17   obvious sentence that I have to impose would be the 25 years.

18       Now, what that leaves, after making that decision, is this

19   conspiracy to commit armed bank robbery and two counts of

20   armed bank robbery.   And nobody is really arguing about the

21   computations on that matter.   That's the level, and they're

22   both the same, so they carry the same sentence.   So I guess in

23   a sense they are concurrent.

24       But the sentence really comes out of one analysis really,

25   and that is with those two units increasing this matter.   It

* BuT WAS IT A 371 conspiracy BASED CASE?!?

1    gave him a reasonable sentence.  But she reduced his sentence,

2    with all the circumstances pointing towards him.

3         And I just feel that it's totally unjustified for her to

4    assume that, because I was supposed to have done this with

5    him, that I was worse.  And she even stated during the trial

6    that I was as responsible as Joe Wilson.  Not more.  You know,

7    if I was "as responsible", Deanna Bischoff should have been "as

8    responsible".  Deanna Bischoff was the one he was with.  Deanna

9    Bischoff was the one in his life.  She was just as much of a

10   conspirator as he was.

11        But the court was agreeable in being lenient with her

12   mainly, I'm assuming, because of her criminal history, which

13   she had none, and I realize that I do.  I realize that I'm not

14   going to come in here and get 25 months or none of that kind

15   of stuff.  I'm not asking for that.  I'll settle my situation

16   on appeal.

17        But as far as the sentencing goes today, Your Honor, I

18   mean, to make -- to make me feel that justice was served, I

19   should at least get consideration of the fact that these two

20   gun charges were under one case.  And the way the law is

21   stating it, if you do it the second time, you should get more.

22   This is the first time.  This is my first violent case, and it

23   still isn't a case that I got.  I mean, I got found convicted

24   of it but I didn't commit this.

25        But so if I was to get out in 15 years, and go back on the

streets, now I'm supposed to know better.  Now, if I commit a
crime again, then I'm looking at the extra 20 years or
whatever, the five years, or however you all was saying that.
I'm not -- I'm kind of lost on that part, because I'm -- I'm
so caught up into the absurdity of the whole situation.  I
mean, I just don't think -- I don't understand how the FBI
started from the very beginning to go to the person with the
gun, the person that had all the evidence pointed towards him,
and tell him that it would be better for him to cooperate with
them against me.

The things they don't tell you in the presentencing
investigations is two points.  One of them, I've been up
against the government before on two different occasions.  One
of those occasions was a case that Joe Wilson went to prison
for in 1989.  I didn't go to prison because I wasn't involved
in that situation, and Joe Wilson told them that I wasn't, but
they felt that I was simply because of our association.  Joe
Wilson came into this situation admitting to crimes that --
well, implicating me in crimes that I never was suspected of,
never charged with.  But Joe Wilson didn't speak of anything
that he and I was supposed to have done together, the only
things that he was supposed to have knowledge of me doing.

Joe Wilson's intent was to get revenge on me, because the
FBI led him to believe that I was going to cooperate with them
against him.  And I heard this from Joe Wilson's mouth.  Joe

1  incarceration because of a lot of bad circumstances after his

2  criminal conduct.   It's things that he set in motion.   It's

3  things the government has set in motion.   And it's all going

4  towards an unjust sentence.

5      It seems like the easiest sentence for this court would be

6  to go down the guideline trail and give him an incredibly long

7  sentence.   But it's not just in looking at what happened to

8  Mr. Wilson.   It's not just looking at his circumstances.   And

9  I believe in my original briefing I've given the court

10 opportunities, or at least I believe the law has given the

11 court opportunities, to impose a just sentence by running the

12 sentence concurrent with the state offense, which would be

13 appropriate, in that there was a federal court hold on him

14 that ran concurrent with that sentence, to run the bank

15 robberies concurrent.   And I would ask the court especially to

16 find that two consecutive five year 924(c) counts is the

17 appropriate sentence for Eric McPherson.

18      Thank you.

19          THE COURT:  Ms. Maida, anything you need to

20 respond to?

21          MS. MAIDA:  Your Honor, we only urge the court

22 to follow the law.

23      Thank you.

24          THE COURT:  Mr. McPherson, you, of course, have

25 the right, and I think I gave you that right the last time, to

(1 of 4)

## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: MCPHERSON, ERIC DETRICK 24919-086

SEQUENCE: 00130167

Report Date: 09-10-2019

| | | | |
|---|---|---|---|
| Facility: | LEX LEXINGTON FMC | Custody Level: | IN |
| Name: | MCPHERSON, ERIC | Security Level: | LOW |
| Register No.: | **24919-086** | Proj. Rel Date: | 01-11-2024 |
| Quarters: | Y03-218L | Release Method: | GCT REL |
| Age: | 57 | DNA Status: | BML04208 / 02-08-2010 |
| Date of Birth: | [redacted]962 | | |

### Contact Information

**Release contact & address**

Naomi Johnson, MOTHER

[redacted] St. Louis, MO 63136 US

Phone (mobile) : 314-741-7007

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 18 USC 2113(A)(2) - ARMED BANK ROBBERY (COUNTS II & IV) 18 USC 371 - CONSPIRACY (COUNT I) | 92 MONTHS |
| 18 USC 924(C) - USE OF A FIREARM DURING A CRIME OF VIOLENCE (COUNT III) | 60 MONTHS |
| 18 USC 924(C) - USE OF A FIREARM DURING A CRIME OF VIOLENCE (COUNT V) | 240 MONTHS |

Date Sentence Computation Began: 10-13-1995

Sentencing District: WASHINGTON, WESTERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 / 0 / 0 | 1,296 | Years: 24 Months: 1 Days: | + 77 JC - 0 InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

### Program Plans

During this term of incarceration, inmate McPherson was tasked with maintaining clear conduct and finding educational, vocational, mental health programming that fit his individual needs. He was given guidance on how to set and reach these goals from his unit team and was referred to any programs that were relevant to his interests.

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LEX | ICP F4 2 | INMATE COMP, SHIFT 2 (#348) | ~~09-07-2019~~ 3-27-19 SMM (CBU) |

### Work Assignment Summary

During this term of incarceration, he has worked in the UNICOR, Accounts Receivable and food service area. He has worked in the Inmate Companion Program. In this area, he has assisted sick or elderly inmates with transporting them to various appointments including medical and psychological. In addition, he transports them to programming, educational, and recreational activities. Lastly, he is available to assist them in the maintenance of their living areas. He has maintained satisfactory work reports.

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LEX | ESL HAS | ENGLISH PROFICIENT | 02-21-1996 |
| LEX | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-05-1996 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LEX M | C | OFFICE MGR APPRENT. | 11-24-2010 | 02-01-2013 |
| LEX M | C | ELECT LAW LIB ORIENTATION | 09-01-2010 | 09-01-2010 |
| BML | C | PRERELEASE RELEASE | 10-09-2008 | 10-09-2008 |
| BMM | C | CONSUMER ECONOMICS | 08-17-2006 | 09-18-2006 |
| BMM | C | JOB INTERVIEWING | 08-17-2006 | 09-18-2006 |

(AM) D - (2 of 4)



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MCPHERSON, ERIC DETRICK 24919-086

SEQUENCE: 00130167
Report Date: 09-10-2019

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| BMM | C | RESUME WRITING CLASS | 07-13-2006 | 08-17-2006 |
| WIL | C | RPP #1 HIV/AIDS AWARENESS | 10-19-2005 | 10-19-2005 |
| BMM | C | ACE LEGAL RESEARCH | 04-21-2003 | 06-13-2003 |
| FLP | C | LEGAL WORKSHOP | 10-09-1996 | 12-29-1996 |
| FLP | C | OE BUS AM 8:00 AM - 10:30 AM | 03-18-1996 | 06-05-1996 |

### Education Information Summary

He has completed several programs during this term of incarceration and made good use of his time. He completed an intensive apprenticeship program in UNICOR, OFFICE MGR APPRENT. He has completed programs related to educational, vocational training, or counseling programs during this term of incarceration.

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 04-21-2014 | 313 : LYING OR FALSIFYING STATEMENT |

### Discipline Summary

He has been able to maintain clear conduct since 2014.

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 06-21-2019 | CURRENT |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 03-28-2019 | 06-21-2019 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 02-11-2019 | 03-28-2019 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 08-16-2018 | 02-11-2019 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 12-11-2017 | 08-16-2018 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 10-30-2017 | 12-11-2017 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 08-05-2016 | 10-30-2017 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 12-03-2015 | 08-05-2016 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 08-10-2015 | 12-01-2015 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 12-12-2013 | 08-07-2015 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 10-11-2013 | 12-12-2013 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 09-08-2013 | 10-11-2013 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 05-10-2013 | 09-08-2013 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 05-09-2013 | 05-10-2013 |
| LEX M | A-DES | OTHER AUTH ABSENCE RETURN | 05-06-2013 | 05-09-2013 |
| LEX M | A-DES | TRANSFER RECEIVED | 02-18-2010 | 05-06-2013 |
| BML | A-DES | TRANSFER RECEIVED | 09-26-2008 | 02-11-2010 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 02-27-2008 | 09-26-2008 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 11-14-2006 | 02-27-2008 |
| BMM | A-DES | TRANSFER RECEIVED | 11-15-2005 | 11-14-2006 |
| WIL | A-DES | TRANSFER RECEIVED | 10-01-2005 | 11-15-2005 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 08-03-2004 | 10-01-2005 |
| BMM | A-DES | OTHER AUTH ABSENCE RETURN | 03-12-2002 | 08-03-2004 |
| BMM | A-DES | TRANSFER RECEIVED | 04-05-1999 | 03-12-2002 |
| FLF | A-DES | TRANSFER RECEIVED | 01-22-1998 | 03-19-1999 |
| FLP | A-DES | US DISTRICT COURT COMMITMENT | 12-08-1995 | 01-22-1998 |

### Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1-MH | CARE1-MENTAL HEALTH | 07-16-2010 |
| CARE2 | STABLE, CHRONIC CARE | 03-01-2010 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| LOWER BUNK | LOWER BUNK REQUIRED | 07-29-2019 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 08-03-2017 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-28-2010 |

Arrul. D - (3 of 4)



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MCPHERSON, ERIC DETRICK  24919-086

SEQUENCE: 00130167
Report Date: 09-10-2019

### Current PTP Assignments

| Assignment | Description | Start |
|---|---|---|
| *NO ASSIGNMENTS* | | |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED NONE | DRUG EDUCATION NONE | 05-18-2009 |

### Physical and Mental Health Summary

Information regarding his physical and mental health can be obtained in his Medical Exit Summary.

### FRP Details

Most Recent Payment Plan

| FRP Assignment: | COMPLT | FINANC RESP-COMPLETED | Start: 05-10-2001 |
|---|---|---|---|
| Inmate Decision: | AGREED | $25.00 | Frequency: QUARTERLY |
| Payments past 6 months: | $0.00 | Obligation Balance: $0.00 | |

Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $250.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $2,756.33 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

### Financial Responsibility Summary

He has completed his Financial Responsibility Program obligations.

### Release Planning

He is serving a 392 month sentence with a five yrs. term of supervision to follow.  He submitted a release plan in which he states he will reside with his mother in St. Louis, MO, that is in his sentencing district.

### General Comments

** No notes entered **

---

Armt. D — (4 of 4)



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MCPHERSON, ERIC DETRICK   24919-086

**SEQUENCE: 00130167**
**Report Date: 09-10-2019**

Name: MCPHERSON, ERIC DETRICK
Register Num: **24919-086**
Age: 57
Date of Birth: ▓▓▓▓ 1962
DNA Status: BML04208 / 02-08-2010

Inmate   (MCPHERSON, ERIC DETRICK, Register Num: 24919-086)

9-10-19
Date

Chairperson

9-10-19
Date

Case Manager

9-10-19
Date



deral Medical Center (FMC) Lexington
O.B. 14500, YOUNITY Unit
xingtcon, KY  40512

<>24919-086<>
District Court
Court Clerk's Office
1717 Pacific AVE
Tacoma, WA 98402
United States

FEDERAL MEDICAL CENTER
3301 LEESTOWN ROAD
LEXINGTON, KY 40511-8799

DATE: 9-7-18

The enclosed letter was processed through special
mailing procedures for forwarding to you. The letter
has been neither opened nor inspected. If the
writer raises a question or problem over which this
facility has jurisdiction, you may wish to return the
material for further information or clarification. If
the writer encloses correspondence for forwarding
to another address, please return the enclosure
to the above address.