```
 1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
 2                            IN TACOMA
   _____
 3

 4    UNITED STATES OF AMERICA,      )
                                     )
 5                   Plaintiff,      )   No. CR94-5708RJB
                                     )
 6          vs.                      )
                                     )       (Telephonic)
 7    ERIC DETRICK McPHERSON,        )
                                     )
 8                   Defendant.      )
   _____
 9


10             MOTION FOR SENTENCE REDUCTION

11 _____

12


13          BEFORE THE HONORABLE ROBERT J. BRYAN
               UNITED STATES DISTRICT COURT JUDGE
14


15                      April 10, 2020

16


17  APPEARANCES:

18  Helen Brunner
    Assistant United States Attorney
19  Representing the Plaintiff


20


21  Jennifer Wellman
    Federal Public Defender's Office
22  Representing the Defendant


23


24


25
```

10:13:11AM  1          THE COURT:  My clock says 10:15.  I think we can

10:15:11AM  2     get started.  Let me first call the roll here and see who

10:15:14AM  3     is on the line.

10:15:15AM  4          Mr. Campbell, my courtroom deputy?

10:15:20AM  5          THE CLERK:  Yes, sir.

10:15:23AM  6          THE COURT:  Barry, my court reporter, are you on,

10:15:30AM  7     Barry?

10:15:31AM  8          THE COURT REPORTER:  Yes, your Honor.

10:15:34AM  9          THE COURT:  Ms. Wellman?

10:15:37AM 10          MS. WELLMAN:  Yes.  Good morning, your Honor.

10:15:39AM 11          THE COURT:  Ms. Brunner.

10:15:42AM 12          MS. BRUNNER:  Yes, your Honor.  I'm here.  Good

10:15:45AM 13     morning.

10:15:45AM 14          THE COURT:  And is Mr. McPherson on the line?

10:15:53AM 15     Apparently not.  I don't know, Ms. Wellman, did you make

10:15:58AM 16     some arrangement for him to call in?

10:16:02AM 17          MS. WELLMAN:  I did, your Honor.  His case

10:16:04AM 18     manager, Ms. Mitchell, forewarned yesterday that due to

10:16:13AM 19     staffing issues she wasn't sure whether she would be able

10:16:16AM 20     to pull it off, but she was going to do her best to try.

10:16:19AM 21     I know Mr. McPherson's mother was also going to try to be

10:16:24AM 22     on as part of the public, your Honor.

10:16:26AM 23          THE COURT:  All right.  Is there anyone who I

10:16:32AM 24     have not named that is going to participate in this

10:16:37AM 25     argument?  I gather not.

10:16:52AM 1        UNIDENTIFIED SPEAKER:  No, your Honor.  I just

10:16:54AM 2    wanted to mention that Michael Markham from Probation is

10:16:57AM 3    on the call.

10:16:59AM 4        MS. DOLVEN:  And I am here, too, Judge Bryan.

10:17:03AM 5    This is Rachel Dolven.

10:17:06AM 6        THE COURT:  Good, Rachel.  That's my law clerk.

10:17:08AM 7    Well, let's get started with this.  This is

10:17:11AM 8    Cause No. 94-5708, United States versus Eric Detrick

10:17:19AM 9    McPherson.  It comes on this morning on the motion that

10:17:26AM 10   Mr. McPherson originally filed pro se, a request for

10:17:34AM 11   compassionate release.  Since then he has been represented

10:17:43AM 12   by Ms. Wellman.

10:17:47AM 13       The parties have submitted substantial briefing.

10:17:53AM 14   I've read everything submitted and reviewed the file,

10:18:00AM 15   including the supplemental memorandum filed by

10:18:09AM 16   Ms. Wellman.  I requested oral argument, and that's where

10:18:21AM 17   we are today.

10:18:25AM 18       We are doing this by conference call in light of the

10:18:33AM 19   courthouse closings and so forth as a result of the

10:18:39AM 20   COVID-19 virus and the general orders of the court.  I

10:18:52AM 21   think we are all set to proceed with oral argument, unless

10:18:56AM 22   there is anything else preliminary that we should talk

10:19:01AM 23   about before we start?

10:19:06AM 24       MS. WELLMAN:  Not from the defense, your Honor.

10:19:08AM 25       MS. BRUNNER:  Not from the government, your

10:19:09AM 1    Honor.

10:19:10AM 2            THE COURT:  Well, Ms. Wellman, the floor is

10:19:15AM 3    yours, or the telephone line is yours.

10:19:18AM 4            MS. WELLMAN:  I'm sorry.  What was that?  I

10:19:25AM 5    missed the question.  I apologize.

10:19:27AM 6            THE COURT:  It is not a question.  I just said

10:19:30AM 7    that the floor is yours.

10:19:34AM 8            MS. WELLMAN:  Thank you, your Honor.  My

10:19:36AM 9    apologies.

10:19:37AM 10       So as your Honor knows, you set this hearing to

10:19:40AM 11   address two questions:  The first, whether extraordinary

10:19:45AM 12   and compelling reasons in 3582 should be interpreted as

10:19:50AM 13   the ordinary meaning of those words, or is the meaning

10:19:54AM 14   limited by the guidelines policy statement in 1B1.13?

10:20:01AM 15       And the second, if not limited by the policy

10:20:04AM 16   statement, does Mr. McPherson present such extraordinary

10:20:09AM 17   and compelling reasons?

10:20:11AM 18       And the short answer is, yes, the ordinary meaning of

10:20:15AM 19   3582 controls, because there does not currently exist for

10:20:20AM 20   purposes of satisfying a First Step Act's consistency

10:20:25AM 21   requirement an applicable policy statement.

10:20:29AM 22       1B1.13 is as close as we get, but it has not been

10:20:35AM 23   amended following the First Step Act, and cannot be said

10:20:38AM 24   to reflect the legislative history or intent of the First

10:20:42AM 25   Step Act.  Put differently, while 1B1.13 is illustrative,

10:20:47AM 1    it is not binding.

10:20:49AM 2        As to the second question, yes, Mr. McPherson

10:20:52AM 3    presents extraordinary and compelling reasons for release.

10:20:55AM 4        Before I get into argument, I did hear someone else

10:20:59AM 5    join the call.  With your Honor's permission, can we

10:21:02AM 6    confirm whether or not that is Mr. McPherson?

10:21:05AM 7            THE COURT:  Yes, please.  Who just came on the

10:21:07AM 8    line?

10:21:08AM 9            MS. MITCHELL:  Hi.  This is Ms. Mitchell calling

10:21:10AM 10   from the federal prison with Mr. McPherson.

10:21:15AM 11           THE COURT:  Mr. McPherson, are you on the line?

10:21:21AM 12           THE DEFENDANT:  I'm on the line.

10:21:23AM 13           MS. WELLMAN:  Great.  Thank you, your Honor.

10:21:30AM 14           THE COURT:  Go ahead, Ms. Wellman.

10:21:33AM 15           MS. WELLMAN:  Turning to the first question, the

10:21:35AM 16   meaning of extraordinary and compelling reasons is not

10:21:37AM 17   limited by the guidelines policy statement to the extent

10:21:42AM 18   the guidelines still reflect a dependence on the director

10:21:46AM 19   of the BOP.

10:21:48AM 20       The government's argument seems to be, in essence,

10:21:51AM 21   that the Court should be limited in its exercise of

10:21:55AM 22   discretion only to those circumstances in Subdivisions A

10:22:00AM 23   through C of the guidelines, and yet ignore the catch-all

10:22:06AM 24   in 1B1.13 comment note 1(D), absent a determination by the

10:22:12AM 25   director.  In other words, they seem to be arguing that

10:22:16AM 1    this Court is precluded from finding there exists an

10:22:21AM 2    extraordinary or compelling reason consistent with the

10:22:23AM 3    applicable policy statement, unless it falls in (A)

10:22:29AM 4    through (C).

10:22:30AM 5        I think that argument, based on the cases that I have

10:22:32AM 6    cited in the briefs, as well as Mr. McPherson cited in his

10:22:36AM 7    original motion, that the government's argument fails to

10:22:41AM 8    recognize the effect the legislative amendment under the

10:22:45AM 9    First Step Act has -- necessarily had on 1B1.3 -- I'm

10:22:52AM 10   sorry, 1B1.13.

10:22:55AM 11       As this Court knows, before the First Step Act, that

10:22:58AM 12   was the guideline policy statement with respect to a 3582

10:23:05AM 13   motion, and it was entirely premised on a motion by the

10:23:08AM 14   director of the BOP, and we see that in the introductory

10:23:15AM 15   paragraphs, as well as in the commentary.

10:23:17AM 16       Long story short, that very rarely happens with the

10:23:20AM 17   BOP as the gatekeeper.  So the purpose of the First Step

10:23:26AM 18   Act was to remove the BOP in that role.  Today, once

10:23:32AM 19   administrative remedies are exhausted, a court, like your

10:23:36AM 20   Honor, may find, independent of any motion, determination,

10:23:41AM 21   or recommendation by the BOP director, that extraordinary

10:23:44AM 22   and compelling reasons exist.

10:23:48AM 23       So understanding that, understanding the purpose of

10:23:51AM 24   the First Step Act, what it really did was effectively

10:23:55AM 25   amend 1B1.13 by eliminating any requirement that a

sentence reduction -- your Honor's exercise of discretion is dependent upon the director of the BOP.

Second, I think the caselaw supports including *Stinson v. United States*, a Supreme Court decision, that any assessment of whether a court -- the court acted consistent with a guideline provision, again, has to be informed by the Act's effect on that policy statement, and here, Application Note 1B in particular.

The *Stinson* court was dealing with an amendment to the guidelines in regards to, I believe -- I think it was the crack cocaine amendments. And in that case -- I'm sorry, felon in possession, the predicate for imposing the career offender guideline.

And what the Court concluded there was that -- or noted, one, a guideline, yes, should -- can interpret and explain how a guideline can be applied, but they are advisory. They do not trump a statute. And they have no real weight if they violate a statute or are inconsistent with that statute, like we assert 1B1.13 is with 3582.

1B1.13 has not been amended, and there is really no sound basis for the contention that it is binding on the Court's exercise of discretion absent that amendment, where the intent of the First Step Act is exactly the opposite of how it is currently written.

For example, the opening paragraph requires relief

only upon motion of the director.  The commentary has the catch-all provision, "as determined by the director."  The commentary includes Note 4, that ties a reduction to the motion by the director.  These qualifiers, these prefatory paragraphs, are no longer instructive, because they run counter to the expressed intent of the First Step Act.

So really what the government is asking your Honor to do in finding -- or limiting your authority or your discretion is to really ignore the intent of the First Step Act.  And, again, nothing in the law requires or supports that approach.

The cases the government relies on are really a minority of cases that either hold on to the prerequisite for the catch-all provision, or really are irrelevant to the facts before this Court, or do not hold what the government is saying they do.

For instance, the *Ebbers* decision, the government cites it for this notion of Congress in fact only expanded access to the courts, it didn't change the standard.  But really that comment was made in support of the notion that the guidelines are helpful in defining a vague standard, even if they are not binding.

Again, I think leaving the BOP director with the authority to trigger and set the criteria for release under 3582 long ago created several problems before the

10:27:46AM 1  First Step Act.  Those problems were meant to be addressed

10:27:49AM 2  by the First Step Act in removing the BOP resistance or

10:27:54AM 3  delay in permitting the Court to take a look at and

10:27:58AM 4  correct what may be a fundamentally unfair sentence due to

10:28:02AM 5  changed circumstances, the intent being federal judges are

10:28:06AM 6  no longer constrained or controlled by the BOP director.

10:28:10AM 7  Instead, the judges are encouraged to increase the use and

10:28:14AM 8  transparency of compassionate release.

10:28:17AM 9       So any reference to the BOP director in the

10:28:20AM 10 application notes requiring a determination or a motion by

10:28:26AM 11 the BOP is simply not binding.

10:28:28AM 12      That was laid out far better than I could do by the

10:28:32AM 13 district court in the *Maumau* decision, where the Court

10:28:36AM 14 said it is not for the district court -- it is for the

10:28:40AM 15 district court, not the BOP, to determine whether there

10:28:44AM 16 are extraordinary and compelling reasons.

10:28:45AM 17      And more recently in the *Redd* decision, the prefatory

10:28:49AM 18 language of Subsection (d) is part and parcel of the

10:28:53AM 19 eliminated requirement that relief must be sought by the

10:28:57AM 20 director in the first instance.

10:29:00AM 21      These decisions join the majority of courts

10:29:03AM 22 concluding the same thing, that the law, the intent,

10:29:07AM 23 normal constructs of statutory construction are consistent

10:29:11AM 24 with the policy statement itself without -- that the Court

10:29:17AM 25 is in a unique position to determine whether circumstances

10:29:20AM 1    warrant a reduction and should not be bound by what the

10:29:24AM 2    director of the BOP has decided.

10:29:27AM 3        So bottom line, the guidelines are helpful, but they

10:29:30AM 4    are not binding, as urged by the government.

10:29:35AM 5        The second question that your Honor asked the parties

10:29:39AM 6    to address today is whether Mr. McPherson presents

10:29:43AM 7    extraordinary and compelling reasons for release.  And

10:29:48AM 8    unless your Honor has questions for me, I will not repeat

10:29:50AM 9    my arguments, but I will summarize that I think the facts

10:29:54AM 10   about Mr. McPherson are not contested, although the

10:29:57AM 11   conclusion is.

10:29:59AM 12       He is suffering from serious physical and medical

10:30:02AM 13   conditions.  To give the government the benefit of the

10:30:06AM 14   doubt, I think what -- their focus in their reply was on

10:30:12AM 15   the 924(c) stacking argument.  But they certainly had the

10:30:16AM 16   records.  In fact, that's how I got the records.  And in

10:30:19AM 17   combing through there, there should be no doubt that he is

10:30:22AM 18   suffering from serious physical and medical conditions.

10:30:26AM 19       It's deteriorating physical health because of the

10:30:29AM 20   aging process, all of which substantially diminishes his

10:30:33AM 21   ability to provide self-care within the facility, and from

10:30:36AM 22   which he is not expected to recover.

10:30:39AM 23       So even putting aside Subsection 1(D) of the

10:30:44AM 24   guidelines, he qualifies, quite clearly, under Comment

10:30:48AM 25   Note 1, Subsection (A).

10:30:51AM 1      And I would highlight for your Honor the *McGraw*

10:30:55AM 2  decision, in which the Court noted that many of the

10:31:00AM 3  conditions that Mr. McGraw had were fairly well managed or

10:31:04AM 4  controlled through medical treatment received while

10:31:07AM 5  incarcerated.  Nevertheless, he warranted release.

10:31:14AM 6      Those facts, in addition to the fact that

10:31:16AM 7  Mr. McPherson would not receive the same sentence today.

10:31:21AM 8  The government does not dispute that fact.  He has served

10:31:25AM 9  twice that, served either in prison or on supervision, by

10:31:28AM 10 his Caucasian co-defendant, who was the leader of the

10:31:31AM 11 offense, and actually held the firearm, simply because

10:31:35AM 12 Mr. McPherson exercised his right to trial.

10:31:39AM 13     His institutional history is exemplary, and his age

10:31:43AM 14 and medical condition, particularly his chronic

10:31:46AM 15 obstructive pulmonary disease, make him particularly

10:31:50AM 16 vulnerable to COVID-19.

10:31:53AM 17     So with all of those factors in play, he certainly

10:31:56AM 18 qualifies for leave under the catch-all provision of

10:31:59AM 19 comments to the guidelines, Note 1(D).

10:32:02AM 20     And I would say that every court [sic] that I have

10:32:05AM 21 read agreed that in circumstances like Mr. McPherson's --

10:32:10AM 22 his circumstances are indeed extraordinary and compelling,

10:32:14AM 23 and none of the cases relied on by the government are

10:32:18AM 24 factually similar or suggest otherwise.

10:32:21AM 25     I cited cases in the supplemental brief, as well as

10:32:24AM 1    the reply, that were decided on 924(c) stacking alone.   I

10:32:32AM 2    think the *Redd* decision said, and I quote, there is no

10:32:37AM 3    doubt that there is a gross disparity between the sentence

10:32:40AM 4    Mr. Redd received and the sentence he would have received

10:32:43AM 5    after the First Step Act.   That disparity is primarily the

10:32:49AM 6    result of Congress's conclusion that the sentences like

10:32:52AM 7    Mr. Redd's are unfair and unnecessary.   In effect, the

10:32:56AM 8    legislative rejection of the need to impose sentences

10:32:59AM 9    under 924(c), as originally enacted, as well as a

10:33:06AM 10   legislative declaration of what level of punishment is

10:33:09AM 11   adequate, these are, the Court finds, extraordinary and

10:33:13AM 12   compelling developments that constitute extraordinary and

10:33:16AM 13   compelling reasons that warrant a reduction to Mr. Redd's

10:33:19AM 14   sentence of incarceration.

10:33:23AM 15        Just yesterday I received word that three more courts

10:33:27AM 16   have followed suit, either on 924(c) alone, the new

10:33:32AM 17   stacking, and taking that into consideration, or on a

10:33:37AM 18   combination of circumstances given the COVID pandemic.

10:33:41AM 19        It includes a case out of Connecticut, a case out of

10:33:45AM 20   New York, and one just out of Alaska yesterday, April 9th,

10:33:51AM 21   *United States v. Plunk*.   In *Plunk,* he was sentenced to two

10:33:55AM 22   concurrent life terms under the then 1994 mandatory

10:34:00AM 23   sentencing guidelines for conspiracy to distribute cocaine

10:34:04AM 24   and possession of cocaine with intent to distribute.   The

10:34:09AM 25   pro se motion was based on his age, medical condition, and

10:34:12AM 1   length of incarceration.  It was also based on the dangers

10:34:17AM 2   that this individual now faces as an inmate due to the

10:34:21AM 3   ongoing national COVID-19 pandemic.

10:34:24AM 4        In that case, unlike this one, the government agreed

10:34:27AM 5   that the release was a just result.  The Court was not

10:34:34AM 6   bound by that agreement, but concluded that was the right

10:34:37AM 7   result, as well.

10:34:38AM 8        Compassionate release due to his medical condition

10:34:40AM 9   and age, particularly in light of the ongoing coronavirus

10:34:45AM 10  pandemic, and that significant time the individual has

10:34:48AM 11  spent in custody, as well as that individual's remarkable

10:34:52AM 12  history of rehabilitation while in custody, warranted

10:34:55AM 13  release.

10:34:56AM 14       The same should happen here.  That is the right, just

10:34:59AM 15  result.  It is the result demanded by compassion at the

10:35:03AM 16  heart of the First Step Act and 3582 in the first place.

10:35:08AM 17       The other factors the Court must decide in

10:35:11AM 18  determining whether, even if he qualifies, relief is

10:35:16AM 19  warranted, I don't believe are disputed by the government.

10:35:19AM 20  One, he is not a danger.  Two, all 3553(a) factors support

10:35:24AM 21  release for all of the reasons stated in my brief.

10:35:27AM 22       And although I was not the attorney in the hearings

10:35:32AM 23  below, I have only known him for a short time, I would

10:35:34AM 24  like your Honor to know that in my working with

10:35:38AM 25  Mr. McPherson that he is an absolute gentleman.

| | |
|---|---|
| 10:35:42AM 1 | I would expect someone in his position to be |
| 10:35:45AM 2 | embittered by a system that penalized him for exercising |
| 10:35:50AM 3 | his constitutional right, and yet there is no bitterness, |
| 10:35:53AM 4 | there's no anger, there's only hope and kindness, a man |
| 10:35:56AM 5 | who has spent every day of the last 26 years trying to |
| 10:35:59AM 6 | educate himself, train himself, be good and kind.  That is |
| 10:36:04AM 7 | the person before your Honor.  So relief should be |
| 10:36:07AM 8 | granted. |
| 10:36:08AM 9 | Finally, I anticipate the government will argue that |
| 10:36:11AM 10 | if relief is granted Mr. McPherson should stay in custody |
| 10:36:15AM 11 | 14 days.  I oppose that request. |
| 10:36:17AM 12 | And if your Honor intends to entertain such a |
| 10:36:20AM 13 | request, I would like to be heard, as it too runs counter |
| 10:36:24AM 14 | to the facts, logic, and the Attorney General's April 3rd |
| 10:36:28AM 15 | memorandum to utilize home confinement where we can to |
| 10:36:31AM 16 | reduce the inmate population.  I will defer to your Honor |
| 10:36:34AM 17 | as to when you would like me to address that issue.  Thank |
| 10:36:38AM 18 | you. |
| 10:36:39AM 19 | THE COURT:  Okay.  Thank you, Ms. Wellman. |
| 10:36:41AM 20 | Ms. Brunner. |
| 10:36:43AM 21 | MS. BRUNNER:  Yes, your Honor.  Several points |
| 10:36:47AM 22 | here.  And I would like to start, perhaps, at a slightly |
| 10:36:51AM 23 | different place, and that is what the First Step Act did |
| 10:36:55AM 24 | and did not do and what Congress did and did not do when |
| 10:37:00AM 25 | it enacted it.  Because if we start there, I think the |

10:37:04AM 1    Court will at least understand the government's position.

10:37:09AM 2        This matter came before the Court with

10:37:14AM 3    Mr. McPherson's pro se motion, which was then followed by

10:37:19AM 4    counsel's reply brief.  And the focus -- much of the focus

10:37:26AM 5    was on the stacked 924(c) sentences.

10:37:30AM 6        So let me start there.  What the First Step Act did,

10:37:35AM 7    of course, was change the nature of how the increased

10:37:41AM 8    sentence for a second offense is to be applied, that is to

10:37:44AM 9    say, it is to be applied only after a first conviction has

10:37:51AM 10   become final, thereby reversing the Supreme Court's old

10:37:56AM 11   decision in *Deal*.

10:37:58AM 12       What Section 403 did not do, however, is make that

10:38:02AM 13   change retroactive.  I raise that because that is in

10:38:05AM 14   contrast with what it did for the mandatory minimum

10:38:08AM 15   penalties applicable to crack cocaine offenses that

10:38:12AM 16   resulted from the Fair Sentencing Act.  The First Step Act

10:38:16AM 17   made those retroactive.  So it was a conscious decision

10:38:20AM 18   not to change this.  Why?  I don't know.  But it was a

10:38:24AM 19   conscious decision.

10:38:26AM 20       What the Act also did was allow defendants to file

10:38:29AM 21   motions under 3582(c)(1) for compassionate release, and no

10:38:35AM 22   longer limiting those motions to those filed by the

10:38:40AM 23   director of the BOP.

10:38:42AM 24       There is no dispute here that this Court does not

10:38:46AM 25   have to wait for the director of BOP, and in fact can

10:38:50AM 1  disagree with a recommendation made by the director of BOP

10:38:56AM 2  or how they would see these factors.

10:38:59AM 3       Having said that, what the Act did not change is

10:39:03AM 4  anything else in the statute.  It didn't change the

10:39:06AM 5  provision that makes release contingent on whether a

10:39:10AM 6  reduction would be consistent with the applicable policy

10:39:15AM 7  statement adopted by the Sentencing Commission.

10:39:18AM 8       And this Court must presume that Congress legislated

10:39:23AM 9  with an understanding of what that provision provided at

10:39:26AM 10 the time that it enacted the First Step Act, and also with

10:39:29AM 11 an understanding that at the time there wasn't a quorum on

10:39:36AM 12 the Sentencing Commission, something that's true a year

10:39:39AM 13 and a half later still, and that as a result there would

10:39:42AM 14 be no change to 1B1.13 as a result.

10:39:49AM 15      Moreover, it didn't add any factors for the Court to

10:39:52AM 16 consider beyond what was in the statute, and it didn't

10:39:55AM 17 direct the Sentencing Commission to change the policy

10:39:58AM 18 statement in any way.

10:40:02AM 19      It's fair to assume, I think, with all of those

10:40:05AM 20 things taken together, that it understood that what was

10:40:10AM 21 laid out in 1B1.13 as to what are the kinds of things that

10:40:20AM 22 constitute extraordinary and compelling reasons should

10:40:23AM 23 remain.

10:40:25AM 24      And that was not the focus here.  Rather, the focus

10:40:27AM 25 was not allowing BOP to be the arbiter.  Rather, giving

10:40:32AM 1   that decision-making power to this Court.  On that point,

10:40:38AM 2   we have no argument.

10:40:40AM 3        I would also point out what the Fair Sentencing Act

10:40:43AM 4   didn't do, interestingly, is it did not amend 28 U.S.C.

10:40:49AM 5   994(t), the statute that directed the Sentencing

10:40:53AM 6   Commission to adopt the policy statement, and which states

10:40:56AM 7   that rehabilitation alone is not, without more, an

10:41:02AM 8   extraordinary and compelling reason to grant release.

10:41:05AM 9        So that is where the government's position begins and

10:41:12AM 10  ends.  There's no doubt that this Court can reach

10:41:15AM 11  different conclusions than the BOP might reach.  But the

10:41:20AM 12  statutory authority is now not totally extended to allow

10:41:26AM 13  anything beyond what is laid out there, which focuses on

10:41:32AM 14  age, disabilities, medical conditions, or family

10:41:36AM 15  circumstances that could be unforeseen, where children,

10:41:43AM 16  for example, would be left without a guardian or a

10:41:46AM 17  caretaker, that kind of issue.

10:41:50AM 18       Now, let me just address briefly Mr. McPherson's

10:41:54AM 19  circumstances.  No doubt he is serving a very long

10:41:55AM 20  sentence --

10:41:56AM 21           THE COURT:  Let me ask you a question before you

10:42:00AM 22  turn to that.  The guideline book I have in front of me is

10:42:11AM 23  the 2018 book.  I think it is the same policy statement.

10:42:25AM 24  But at the end of that is the background about what the

10:42:34AM 25  Sentencing Commission should do.  When was that background

10:42:45AM  1    adopted and by whom?  It wasn't the Sentencing Commission,

10:42:59AM  2    because it says, "The Commission is required by statute."

10:43:07AM  3    I am curious when that was adopted and who adopted it.

10:43:16AM  4         MS. BRUNNER:  Your Honor, that was adopted -- the

10:43:17AM  5    background statement, obviously, was written by the

10:43:21AM  6    Sentencing Commission, but it references 28 U.S.C. 994,

10:43:25AM  7    which was enacted as part of the Sentencing Reform Act way

10:43:31AM  8    back when.

10:43:35AM  9         I can't say when -- whether Subsection (t) -- I did

10:43:41AM 10    not research whether it has been amended over time.  But

10:43:47AM 11    Subsection (t) was part of that.  And Subsection (t)

10:43:51AM 12    directs the Sentencing Commission to promulgate this

10:43:53AM 13    general policy statement regarding sentence modifications

10:43:57AM 14    under Section 3582(c)(1)(A), which is what we are talking

10:44:01AM 15    about here.

10:44:10AM 16         Does that answer the Court's question?

10:44:12AM 17         THE COURT:  Well, I think it's as near as you

10:44:17AM 18    can.  Go ahead, Ms. Brunner.

10:44:20AM 19         MS. BRUNNER:  I was going to note, I guess,

10:44:28AM 20    having considered all of those factors about what the

10:44:31AM 21    First Step Act did and did not do, the question then is

10:44:36AM 22    whether Mr. McPherson has demonstrated, and counsel on his

10:44:44AM 23    behalf, extraordinary and compelling reasons.

10:44:48AM 24         The reason we took the position we did is, we don't

10:44:52AM 25    think this Court can, through this provision, address the

10:44:58AM  1    stacked 924(c).

10:45:00AM  2         We certainly understand that this is an extremely

10:45:03AM  3    long sentence.  It is accurate to say he would be unlikely

10:45:13AM  4    to get that length of a sentence today if he were to be

10:45:17AM  5    sentenced.  It is also true at the time that -- although

10:45:22AM  6    he is not described as the leader, that if one goes back

10:45:27AM  7    and looks at the presentence report, he was also the

10:45:31AM  8    person who most terrified the victims in this case.  Even

10:45:35AM  9    though his co-defendant was the one holding the gun, he

10:45:39AM 10    was the one who was threatening them behind the counter.

10:45:44AM 11         I know that when 23 years pass that there is a -- in

10:45:50AM 12    this case I guess it is 26 years passed, that we have a

10:45:54AM 13    different person today than we had at the time.  But there

10:45:58AM 14    was some reason why there was concern at the time.

10:46:02AM 15         In terms of his health, I think it is interesting

10:46:05AM 16    here that the one issue that Mr. McPherson didn't focus on

10:46:10AM 17    at the time he filed his motion in January was his health.

10:46:17AM 18    There is one paragraph towards the end of the motion.

10:46:21AM 19    This is now the focus of -- much of the focus of the

10:46:28AM 20    argument by defense.

10:46:29AM 21         It is certainly clear that he has some health issues,

10:46:33AM 22    but he is not totally debilitated by any means.  He is not

10:46:41AM 23    a young man.  And maybe this is a function of my age

10:46:46AM 24    versus the age of others, but I don't also consider him

10:46:50AM 25    elderly.

I also understand that COVID is a very, very serious illness, and that someone with various preexisting conditions will be more at risk, but I would point out that the facility at which he is located, at least as of this morning, there are no positive COVID cases.  The BOP has been taking extraordinary measures to try and limit the introduction in any way of this disease into the prison system.

They have been mostly successful.  Eighty-eight out of their 124 facilities -- 85 rather, have no staff or no inmate with COVID.  The fact that it is a serious illness means that even if this Court releases him doesn't guarantee that he wouldn't get it on the outside.

As to the 14-day period, if the Court disagrees with the government on the legal analysis, and believes that he has made the extraordinary and compelling reasons to reduce his sentence now, part of the reason we are asking for the 14 days is, in part, to ensure that not only he is protected, but that the community is protected.

It's a provision that has been put in place.  It is being used even in those cases where the Attorney General has granted extra authority, thanks to the CARES Act, to allow people to be moved to home detention that meet certain criteria.  All of those people are kept in quarantine for 14 days before they are allowed to leave,

10:48:43AM 1    for everyone's protection.

10:48:46AM 2        We would ask that be put into place if the Court is

10:48:52AM 3    inclined to agree that he should get a reduction in

10:48:56AM 4    sentence.

10:48:58AM 5            THE COURT:  Just hold on a minute.  Let me think

10:49:01AM 6    about this and see if I have some questions.  Let's turn

10:49:25AM 7    to the basic question here, Ms. Brunner, and that is, why

10:49:34AM 8    do you want to keep this fellow in custody?

10:49:37AM 9            MS. BRUNNER:  Your Honor, let me answer the

10:49:41AM 10   question this way:  I think my job is to advocate what the

10:49:50AM 11   government certainly believes the law allows and what it

10:49:54AM 12   does not allow.

10:49:57AM 13       If you were asking me in the abstract, without the

10:50:00AM 14   legal constructs that I think apply in this case, whether

10:50:05AM 15   I think Mr. McPherson needs more time, I might tell you

10:50:11AM 16   no.  But that's not the place that I am able to advocate

10:50:19AM 17   for.  I am not his advocate.  I think that my job is to

10:50:26AM 18   inform the Court what I think the statutory restrictions

10:50:29AM 19   are.

10:50:30AM 20       And where the argument is almost entirely focused on

10:50:36AM 21   the fact that he has gotten a lengthier sentence than he

10:50:40AM 22   would receive today, but Congress chose not to make those

10:50:46AM 23   changes retroactive, that is something that I don't have

10:50:51AM 24   an ability to change.

10:50:54AM 25           THE COURT:  Okay.  I understand.  Thank you.

10:50:59AM 1    Ms. Wellman, any response?

10:51:01AM 2          MS. WELLMAN:  Thank you, your Honor.  Briefly.

10:51:05AM 3    One, with respect to the 924(c) stacking laws not being

10:51:10AM 4    retroactive, as I pointed out in our brief, that just

10:51:14AM 5    because something is not retroactive, that doesn't mean

10:51:17AM 6    that your Honor is foreclosed from considering it and

10:51:22AM 7    other avenues for relief, like here, compassionate relief.

10:51:28AM 8          The government's argument basically says to this

10:51:30AM 9    Court to read into 3582 that compassionate relief can be

10:51:36AM 10   granted in extraordinary cases, except 924 cases, or, like

10:51:44AM 11   *Plunk*, mandatory life sentences.  And we know nothing of

10:51:48AM 12   the sort is in the statutory language.

10:51:50AM 13         I would encourage your Honor to look at the *Maumau*

10:51:53AM 14   decision that makes very clear that your Honor has the

10:51:57AM 15   authority to revisit a defendant's sentence in this

10:52:00AM 16   context.

10:52:01AM 17         Second, the government's arguments were made in *Redd*

10:52:07AM 18   and *Maumau,* and soundly rejected.  And I want to be clear,

10:52:12AM 19   there does not currently exist for purposes of satisfying

10:52:16AM 20   3582's consistency applicable -- with an applicable policy

10:52:24AM 21   statement any provision, because the Commission has not

10:52:27AM 22   met post-First Step Act to do so.  So 1B1.13 is as close

10:52:34AM 23   as we get.  And we know it doesn't reflect the intent of

10:52:40AM 24   the First Step Act, and yet it should be informed by the

10:52:47AM 25   First Step Act.

10:52:49AM 1      The third thing, Ms. Brunner mentioned

10:52:57AM 2 Mr. McPherson's role in the offense.  Neither

10:52:59AM 3 Mr. McPherson nor I are suggesting the offense wasn't

10:53:04AM 4 serious, it absolutely was, or that it was a legal

10:53:08AM 5 sentence at the time.  It was.  It was affirmed on appeal,

10:53:13AM 6 as well.  The question before the Court, though, is

10:53:15AM 7 whether there are changed circumstances that warrant

10:53:19AM 8 revisiting the fairness of that sentence today.

10:53:25AM 9      Finally, with respect to Mr. McPherson's focus in his

10:53:34AM 10 original pro se motion, he did note his medical

10:53:41AM 11 conditions.  I would suggest the reason he did not raise a

10:53:44AM 12 1(a) ground for release is, one, pride, as he should have

10:53:49AM 13 pride, in that he works.

10:53:51AM 14      But as I noted, in actually combing through the

10:53:54AM 15 records, he desaturates on a six-mile -- minute walk.  He

10:54:02AM 16 is confined to a lower bunk.  He uses a CPAP machine.  He

10:54:06AM 17 can't walk up stairs.  He can't lift more than 25 pounds.

10:54:09AM 18 The caselaw does not require that you are unable to do

10:54:14AM 19 your daily routine.  So for that I would say that, at a

10:54:19AM 20 minimum, it still should inform the catch-all provision

10:54:25AM 21 and warrant relief.

10:54:29AM 22      With respect to Ms. Brunner's comment about the 14

10:54:32AM 23 days to quarantine, would your Honor like me to address

10:54:37AM 24 that now or wait?

10:54:39AM 25      THE COURT:  Well, this is your only chance.

10:54:44AM 1       MS. WELLMAN:  With respect to that, I understand

10:54:47AM 2   and I appreciate the steps that the Bureau of Prisons is

10:54:50AM 3   trying to take.  And I do have to give a shout out to

10:54:53AM 4   Mr. McPherson's case manager, Ms. Mitchell, who is on the

10:54:57AM 5   phone and has made it so that I can communicate with

10:55:00AM 6   Mr. McPherson, and she made it so he could be on the call

10:55:05AM 7   today.

10:55:05AM 8       But the Attorney General's April 3rd memorandum on

10:55:08AM 9   home confinement specifically talks about prioritizing the

10:55:13AM 10  transfer of inmates to home confinement where appropriate

10:55:16AM 11  to decrease the risk to their health.

10:55:19AM 12      The government made this argument in *Resnick* in

10:55:24AM 13  New York about, "Well, they don't have it in the facility,

10:55:28AM 14  you but he should still serve another 14 days in

10:55:31AM 15  quarantine before he is released to the community."  That

10:55:34AM 16  individual had served a little over three years of a

10:55:38AM 17  six-year sentence, and he was granted relief due to

10:55:41AM 18  medical conditions in combination with his particular

10:55:45AM 19  vulnerability to COVID-19.  He's 65 years old, in

10:55:50AM 20  relatively stable health, but had liver disease.

10:55:53AM 21      And, again, the government there, like here, after 14

10:55:57AM 22  days, rather than release to his home with his wife, in

10:56:01AM 23  keeping with Barr's memo -- March 26th memo, the defense

10:56:06AM 24  in that case, like I am, argued that such a quarantine is

10:56:10AM 25  not warranted by the situation and would subject him to

10:56:14AM 1  additional unnecessary risk of contracting COVID-19.  The

10:56:18AM 2  Court there agreed, saying, quote, releasing a prisoner

10:56:22AM 3  who is for all practical purposes deserving of

10:56:24AM 4  compassionate release during normal times is all but

10:56:29AM 5  mandated in the age of COVID-19, end quote.

10:56:32AM 6       Here, like in that case, there is a release plan that

10:56:37AM 7  has been approved, thanks to Probation Officer Markham,

10:56:41AM 8  who I know is listening to this call.  And no doubt it is

10:56:44AM 9  in keeping with the shelter-in-place rules, given

10:56:48AM 10 Ms. Johnson, his mother, is a retired professional in the

10:56:53AM 11 medical community.  She has a three-bedroom home in which,

10:56:56AM 12 if necessary, she can observe quarantine protocol on site.

10:57:00AM 13 She knows the medical system well, has access to medical

10:57:03AM 14 care, and this environment is significantly better than

10:57:07AM 15 anything FMC Lexington can put into place, despite the

10:57:13AM 16 BOP's best efforts.

10:57:14AM 17      So where we know his risk is far greater inside the

10:57:19AM 18 institutional walls than at home, I would ask your Honor

10:57:23AM 19 to not only grant release, because it is -- he qualifies

10:57:27AM 20 and it is warranted, to home, in that it will not increase

10:57:34AM 21 the risk to Mr. McPherson of contracting COVID-19 or the

10:57:38AM 22 community at large.  Thank you, your Honor.

10:57:43AM 23           THE COURT:  Okay.  Thank you both.  I will start

10:57:50AM 24 writing and get the opinion out to you in an order as soon

10:57:57AM 25 as I can.  But it will be early next week, I'm afraid,

10:58:06AM 1    with the weekend coming up and so forth, and also the

10:58:13AM 2    difficulty within chambers of passing drafts back and

10:58:20AM 3    forth, and so forth, with my law clerks.

10:58:27AM 4         Thank you all very much.  Your arguments have been

10:58:33AM 5    helpful.  I think I understand the situation.  We will be

10:58:40AM 6    adjourned.  Thank you.

10:58:43AM 7              MS. WELLMAN:  Thank you, your Honor.

10:58:44AM 8              MS. BRUNNER:  Thank you, your Honor.

9              THE DEFENDANT:  Thank you.

10                  (Proceedings adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            **C E R T I F I C A T E**

2

3

4     **I, Barry Fanning, Official Court Reporter for the**

5  **United States District Court, Western District of**

6  **Washington, certify that the foregoing is a true and**

7  **correct transcript from the record of proceedings in the**

8  **above-entitled matter.**

9

10

11

12  _____

    **/s/ Barry Fanning**
13  **Barry Fanning, Court Reporter**

14

15

16

17

18

19

20

21

22

23

24

25